UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-60255-CIV-ZLOCH/ROSENBAUM

ROSE J. SPANO,

    Plaintiff,

v.

MICHAEL SATZ, et al.,

    Defendants.
_____/

**ORDER**

This matter comes before the Court on Plaintiff Rose J. Spano's Motion to Compel Defendant to Answer[] Deposition Questions and Motion for Sanctions Pursuant to Fed. R. Civ. P., Rule 37(a)(3)(B)(i) and Rule 37(a)(4) [D.E. 164], pursuant to the Honorable William J. Zloch's Order of Referral [D.E. 78] for appropriate disposition. Upon review of the Motion, all filings in support thereof and in opposition thereto, and the record, the Court hereby denies Plaintiff's Motion to Compel.

In her Motion, Plaintiff asserts that Defendant David Schulson "either failed to answer [deposition questions] or [his answers were] so evasive or incomplete such answer[s] must be treated as a failure to answer or respond." D.E. 164 at 1. She then identifies two-and-one-half pages of questions and purported answers that she contends constitute examples of Defendant Schulson's alleged obstructionist conduct. Other than simply invoking Rules 37(a)(3)(B)(i) and 37(a)(4), Plaintiff relies upon no law for her position that Defendant Schulson's answers were evasive and worthy of sanctions.

A review of applicable case law, however, demonstrates that courts grant motions to compel

answers to deposition questions in circumstances far different from those present in this case. In *Carey v. Rudeseal*, 112 F.R.D. 95 (N.D. Ga. 1986), for example, the deponent in a civil case refused to answer questions regarding where she lived, what her race was, what her age was, and who her attorney was, instead invoking her Fifth Amendment right to remain silent. *See id.* at 97-98. The record in the case, however, revealed no reasonable cause to apprehend danger from a direct answer of such questions, and the deponent had had the opportunity to consult first with legal counsel. Under such circumstances, the court concluded that the deponent should be compelled to respond to the unanswered deposition questions.

Similarly, in *Ebeh v. Tropical Sportwear Int'l Corp.*, 199 F.R.D. 696 (M.D. Fla. 2001), the deponent repeatedly refused to answer questions on the grounds of relevancy. After the deposing attorney explained that she still had to answer the questions, although her objections would be preserved, the deponent persisted in refusing to answer questions. On numerous occasions, the deposing attorney warned the deponent that his client would move to compel answers and impose monetary sanctions, but the deponent continued to refuse to answer. Then, after a break in the deposition, the deponent abruptly unilaterally ended the deposition and walked out. In that case, the court determined that the motion to compel should be granted, and it imposed sanctions. *Id.* at 698-99.

This case bears no resemblance to *Carey*, *Ebeh*, or any other case this Court has uncovered where the presiding court granted the motion to compel and imposed sanctions. Indeed, in reviewing the questions and purported answers about which Plaintiff complains, the Court first observes that the responses that Plaintiff identifies in her Motion as Defendant Schulson's answers are not, in fact, what Defendant Schulson said. For example, the Motion asserts that the following questions and

answers occurred during the deposition:

>   Q:   [B]ut the [p]rosecutor would argue whether they believe that a person should be given a bond or not, isn't that correct?
>
>   No [r]esponse to [q]uestion asked
>
>   Q:   [A]nd when they look at whether a person is a flight risk, they look at things like ties to the community, you know, whether they have family in the community, whether they have made statements that the[y] are going to take off; wouldn't you agree with that? That those would be some of the factors you look at?
>
>   No [r]esponse to [q]uestion [a]sked
>
>   Q:   Okay. But as a prosecutor and you're arguing to the [j]udge that a person should not be given a bond, those are the type of factors that you would be considering, right?
>
>   No [r]esponse to the [q]uestion [a]sked

*Id.* at 1-2. The transcript of the deposition, however, reveals that the actual questions and answers given were as follows:

>   Q:   [B]ut the [p]rosecutor would argue whether they believe that a person should be given a bond or not, isn't that correct?
>
>   A:   It would be a factor for the Court.
>
>   Q:   [A]nd when they look at whether a person is a flight risk, they look at things like ties to the community, you know, whether they have family in the community, whether they have made statements that the[y] are going to take off; wouldn't you agree with that? That those would be some of the factors you look at?
>
>   A:   I only agree that the judge makes the decision.
>
>   Q:   Okay. But as a prosecutor and you're arguing to the [j]udge that a person should not be given a bond, those are the type of factors that you would be considering, right?

>           A:      Depends on the case.

D.E. 171 at 16-17.[1]  Thus, the actual record reveals a different story than that recounted by Plaintiff in her Motion.

Moreover, immediately following this last response, Plaintiff's attorney elected to turn to a different topic.  *See id.*  Absent from the contested parts of the transcript is any indication by the deposing attorney that he attempted to obtain any better answers to the questions he asked.  While the deposing attorney should not have to engage in Vulcan mind games to obtain answers to his questions, he does bear the burden of making clear to the deponent exactly what information it is that he seeks.  At the very least, where a deposing attorney believes a deponent to be acting in an evasive manner, he should say so and give the deponent an opportunity to correct any perceived deficiency.  In this portion of the deposition, that did not occur.

And, later, in a different part of the deposition, where the deposing attorney did advise the deponent that he believed that the deponent was not answering his question, the record reveals that, in fact, the deponent did answer the question posed:

>           Q:      Okay.  And you at that point were aware that she had physical
>                   – that she had been complaining of having physical ailments
>                   in jail, correct?
>
>           A:      I don't understand your question.
>
>           Q:      Well, you had been put on notice that she had been to the
>                   emergency room; you had been put on notice by her attorney
>                   that she was physically deteriorating.  Had not Mr. Entin told
>                   you that?

---

[1] Some docket entries, including this one, have two page-numbering systems resulting in different page numbers on the same page: the page number of the original document and the page number imprinted across the top of the page by the Court's CM/ECF system.  This Order refers to the page numbers left by the Court's CM/ECF system.

\* \* \* \* \*

A: Our discussion, as memorialized in my e-mail to him –

Q: David –

A: – had to do with her mental health. And let me finish my answer.

Q: Yes.

A: On the hearing, Mr. Della Fera covered for Mr. Entin on October 27th –

Q: Right.

A: – and there was not one request for an additional court order regarding her physical health. The discussion had to do with her competency.

Q: Okay.

A: Same thing November 20th. Mr. –

Q: For the record, you're not answering my question –

A: I am answering it. There was no discussion.

Q: – which is yes or no or I don't remember.

A: There was no –

Q: And then you can explain.

A: There was absolutely no discussion by the Court or her attorneys of her physical health in the Broward County Jail on either October 23rd or November 20th, 2008, in front of Judge O'Connor.

Q: So it's your statement that by the November 20th hearing you had absolutely no knowledge that Rose Spano had any medical problems; yes or no?

A: I don't –

5

> \* \* \* \* \*
> A: My only knowledge was through her motion to reinstate bond that I previously testified was prepared by Mr. Entin and he dated it October 15th, that was – he informed me via that motion and that was it.
>
> Q: But you did know via that motion?
>
> A: Via that motion.
>
> Q: Yeah, okay.

*Id.* at 27-26. While Plaintiff contends in her Motion that this exchange represents an evasive response in violation of the Federal Rules, this Court disagrees. Instead, the Court finds that the deponent did answer the questions asked. Furthermore, the remedy Plaintiff requests seeks to reopen the deposition to obtain responses to the supposedly evaded questions. Because the question at issue was answered, the Court fails to understand how reopening the deposition will serve the stated purpose.

The Court has similarly reviewed each and every other complaint Plaintiff makes regarding Defendant Schulson's answers to deposition questions, but will not belabor the record by repeating another several pages of deposition questions and answers here. Instead, the Court simply notes that it finds Plaintiff's objections to be without merit for the same reasons previously discussed. Although Plaintiff may not like the answers that she received to the questions asked, that, in and of itself, does not make the responses evasive or otherwise improper.

### III. Conclusion

For the foregoing reasons, Plaintiff Rose J. Spano's Motion to Compel Defendant to Answer[] Deposition Questions and Motion for Sanctions Pursuant to Fed. R. Civ. P., Rule

37(a)(3)(B)(i) and Rule 37(a)(4) [D.E. 164] is hereby **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 9th day of August 2010.

                                             _____
                                             ROBIN S. ROSENBAUM
                                             United States Magistrate Judge

cc:   The Honorable William J. Zloch
      Counsel of Record