UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60255-CIV-ZLOCH

ROSE J. SPANO,

      Plaintiff,

vs.                                          **O R D E R**

MICHAEL SATZ, et al.,

      Defendants.

_____/

THIS MATTER is before the Court upon the Motions For Summary Judgment (DE Nos. 151, 152, & 153) filed respectively herein by Defendants Douglas Swerdowski, Angelo Pazienza, and David Schulson (collectively "Defendants").  The Court has carefully reviewed said Motions, the entire court file, and is otherwise fully advised in the premises.

This is a civil rights case.  Plaintiff Rose J. Spano, a disbarred Florida attorney, initiated the above-styled cause with the filing of a Complaint (DE 1)[1] alleging, inter alia, that Defendants Swerdowski (a parole/probation officer), Pazienza (a state investigator), and Schulson (an assistant state attorney), in their official and personal capacities, violated her Fifth, Eighth, Ninth, and Fourteenth Amendment Rights pursuant to 42 U.S.C. § 1983 by

---

[1] Originally, Plaintiff also named as defendants several Justices of the Florida Supreme Court on the theory that they had improperly disbarred her from the Florida Bar.  However, the Court granted the Justices' Motion To Dismiss (DE 26) pursuant to Fed. R. Civ. P. 12(b)(1).  See DE 33.  The Court also later dismissed Plaintiff's Complaint (DE 35) as to Defendant State Attorney Michael Satz, but declined to dismiss Plaintiff's Complaint as to Defendant Schulson.  See DE 60.

denying her access to necessary medical care. Plaintiff subsequently filed an Amended Complaint (hereinafter "Complaint") (DE 35) alleging in Counts II and III that despite their knowledge of her medical condition, known as uterine fibroids, Defendants nevertheless conspired to delay, deny, or interfere with the medical appointments she urgently required, through the ostensibly legitimate means of prosecution and community supervision. Defendants' motive, according to Plaintiff, was to exact retribution for a civil suit she filed against them, and further, to stymie her budding legal prowess in the federal courts. Defendants Swerdowski, Pazienza, and Schulson have now each moved for summary judgment, disputing that they interfered in any way with Plaintiff's medical treatment, and asserting their immunity to Plaintiff's claims. For the reasons detailed below, the Court will grant their Motions.

## I. <u>Background</u>

The following facts are undisputed unless otherwise noted. Plaintiff Rose J. Spano is an attorney who was suspended from legal practice in 2004, initially disbarred from the Florida Bar in 2005 for continuing to practice law during her suspension, and permanently disbarred on July 17, 2007. Defendant Angelo Pazienza is a State Attorney Investigator with the Office of the State Attorney, Broward County, Florida. Defendant David Schulson is an Assistant State Attorney (ASA) with the Office of the State Attorney, Broward County, Florida (hereinafter "the State Attorney's Office"). Defendant

2

Douglas Swerdowski is a Community Control Officer with the Florida Department of Corrections.

Despite her disbarment for the unauthorized practice of law, Plaintiff was observed continuing to practice law in Florida in 2006. On February 2, 2007, Defendant Schulson charged Plaintiff with three counts of practicing law while disbarred, based upon an affidavit filed by Defendant Pazienza.

Evidently unchastened by her disbarment and the pending criminal prosecution against her, Plaintiff again attracted the attention of the State Attorney's Office the following year.  On September 23, 2008, Defendant Schulson, again acting on an affidavit authored by Defendant Pazienza,[2] charged Plaintiff with two counts of uttering a forged instrument and two counts of falsifying records, alleging that Plaintiff forged a Notice of Hearing in the course of the criminal case against her.  A Capias Warrant was issued[3] and Plaintiff was arrested on October 3, 2008.  She would remain in the Broward County Jail (hereinafter "the Jail") until December 18, 2008.

It was during this stint in the Jail that Plaintiff's undiagnosed medical condition, uterine fibroids, caused her to

---

[2] These two affidavits constitute the entirety of Defendant Pazienza's involvement with Plaintiff.  In fact, Plaintiff later admitted at her deposition that she has no knowledge that Defendant Pazienza ever did anything to interfere with her medical care. It is undisputed, therefore, that Investigator Pazienza never intervened or attempted to intervene in the Plaintiff's medical care, nor did he conspire to or encourage any such intervention.  See DE 154, ¶ 38.

[3] According to Plaintiff, no such warrant ever existed.  DE 35, ¶¶ 36, 37.

experience pain and uterine bleeding.  It was also during this period that Defendant Schulson, who was the prosecutor assigned to her case, is alleged to have become aware of Plaintiff's medical condition. For instance, on October 7, 2008, shortly after her arrest, Plaintiff was brought before the state court for a determination of counsel hearing.  At the hearing, Plaintiff allegedly advised Defendant Schulson that she needed to be released on bond or on her own recognizance because she had begun to hemorrhage from her uterus and needed to see her gynecologist.  DE 206, p. 1; DE 154, ¶ 18. Plaintiff further alleges that although Defendant Schulson observed blood on her clothing there in the courtroom, he still denied her request.  Id. at  ¶¶ 18 & 21.  However, the transcript from the October 7, 2008 hearing reveals only that Plaintiff told the Judge that a week prior, she had been informed that she might have an incisional hernia and that it may have started to hemorrhage the previous Saturday (presumably October 4, 2007).  Id. at ¶ 18.  She informed the Judge that she required imminent treatment, and requested that the court release her on bond or on her own recognizance.  Id.; DE 155-13, pp. 3-4.  The Court denied her request for release and ordered the medical provider at the Jail to address Plaintiff's medical condition.  Id.; DE 155-13, pp. 6-9.

In any event, just two days later, on October 9, 2008, Plaintiff had to be taken to the Emergency Room at North Broward Hospital because she was hemorrhaging from her uterus.  Plaintiff testified at her deposition that an emergency room doctor shunted her arm to stop

4

the bleeding, told her that she may have a condition known as fibroids, and instructed her that she needed to follow up with her gynecologist within a week or ten days. Id. at ¶ 15. Later in her deposition, Plaintiff altered her testimony, asserting that the emergency room doctor referred her for an ultrasound and potential surgery. Id. When she returned to the Jail, Plaintiff was placed on the medical floor where she was given maxi pads to absorb her bleeding whenever she asked for them. Plaintiff cannot recall whether she ever made another request for emergency medical care while held at the Jail. Plaintiff did make two non-emergency requests for medical care at the Jail on November 11, 2008, and November 22, 2008, both related to her hemorrhaging. The latter request mentioned that she had been referred to out-patient medical care for an ultrasound and possible surgery. It is unclear from the record what steps, if any, the Jail took in response to this request.

Regardless, Plaintiff alleges that beginning on October 15, 2008, and thereafter, she repeatedly asked Defendant Schulson to agree to her release so that she could obtain appropriate medical care outside the Jail, but to no avail. DE 206, pp. 1-2. However, Plaintiff has not pointed the Court to any evidence of these requests.

In the weeks following her emergency room visit, Plaintiff's uterine bleeding lessened for a period of time, before worsening again in late November or early December 2008.

On December 18, 2008, she pleaded nolo contendere to two of the

three unlawful practice of law charges lodged against her, and the State dropped the remaining charges pending in both criminal cases.[4] She was then sentenced to one year of community control followed by three years of probation. Her community control entailed living at home without any electronic monitoring. In addition, Plaintiff was not permitted to travel more than thirty minutes away without the Court's permission. She was instructed that if she had a medical emergency, she should go to the emergency room or call 9-1-1. Following her plea, Plaintiff was released from jail into the Community Control Program on December 18, 2008.

Upon her release, Defendant Swerdowski was appointed as Plaintiff's Community Control Officer.[5] Under the Community Control Program, Plaintiff was generally permitted to come and go as she pleased, but she did have to submit proposed daily schedules to Defendant Swerdowski. This requirement would soon cause conflict. It is undisputed that Defendant Swerdowski, upon reviewing Plaintiff's proposed schedules, crossed out some of Plaintiff's proposed medical appointments and returned the schedules to

---

[4] On January 16, 2009, Plaintiff filed a motion to withdraw her nolo contendere plea as involuntary because she alleged she was suffering from serious emotional and physical problems at that time. DE 154, ¶ 8. However, in the course of an evidentiary hearing on this motion on May 29, 2009, Plaintiff opted to withdraw her motion and accept the State's offer to convert her remaining sentence of community control into a period of probation. Id.

[5] Contrary to Plaintiff's allegations, nothing in the record demonstrates that Defendant Swerdowski had any responsibility for Plaintiff while she was in the physical custody of the Broward County Jail between October and mid-December 2008.

Plaintiff.   But the Parties differ as to the significance of a crossed-out appointment.   According to Plaintiff, a crossed-out appointment meant that she was prohibited from attending that appointment.   According to Defendant Swerdowski, it simply signified that he either (1) did not believe that Plaintiff would actually attend that appointment, or (2) he had learned that she had not actually <u>scheduled</u> that appointment with the given doctor's office.

Plaintiff further alleges that Defendant Swerdowski verbally forbade her from attending medical appointments.   For example, she testified that Defendant Swerdowski would "just X through the schedule and say 'you're going to [sic] home.   You're not going to see your doctor."   DE 155, Ex. CCC, p. 102.   However, Defendant Swerdowski has testified that he did not discourage or disallow her attendance at medical appointments.   DE 154, ¶ 9.

Plaintiff also claims that Defendant Swerdowski filed technical and perjurious violations of the Community Control Program against her in order to delay her from obtaining the medical attention she required.   Defendant Swerdowski did in fact prepare two program violation affidavits in January and March of 2009, respectively.   But there is no evidence in the record that his affidavits contained perjury, nor that he filed them to interfere with Plaintiff's medical care.[6]   In fact, Plaintiff later admitted to the violations alleged

---

[6] The second affidavit did result in her arrest.   Plaintiff was arrested on March 12 or March 13, 2009.   She was in custody for between one and five days and then released back into the Community Control Program.   <u>See</u> DE 155-7, Ex. VV.

in the March, 2009 affidavit.

Plaintiff likewise alleges that during her period of community control, Defendant Schulson used the power of his office to deny her desperately needed medical care.  But the gravamen of her claim is evidently that Defendant Schulson would not agree to telephone requests from her attorney in February 2009 that she be permitted to travel to Boston for medical treatment.  DE 154, ¶ 31; DE 182, ¶ 39.  In the face of these denials, Plaintiff petitioned the court in writing on February 25, 2009, for permission to travel out of state for medical treatment, but withdrew this motion on March 13, 2009, before the court could rule on it.  DE 152, p. 3; DE 154, ¶ 39.  This is the only written motion for medical care Plaintiff ever filed with the court.

Notwithstanding these barriers to her medical care allegedly erected by Defendants Swerdowski and Schulson, Plaintiff did visit various physicians between December, 2008, and April, 2009, who confirmed that she was in fact suffering from symptomatic uterine fibroids and required surgery.

Unfortunately, her fibroids had apparently grown too large to be surgically removed.  Instead, Dr. Lanalee Sam advised Plaintiff that her entire uterus would need to be removed.  Plaintiff elected to have this surgery, and on approximately April 29, 2009, Dr. Sam successfully performed it.  Dr. Sam later testified that Plaintiff's fibroids had been the same size or perhaps a bit smaller since November or December, 2008.  According to Dr. Sam, this condition is not life-threatening but can be incredibly uncomfortable.

8

## II. <u>Standard of Review</u>

Under Federal Rule of Civil Procedure 56©, summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."   The party seeking summary judgment

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)(quotation omitted).  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991); <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11th Cir. 1991).

The moving party is entitled to "judgment as a matter of law" when the non-moving party fails to make a sufficient showing of an essential element of the case to which the non-moving party has the burden of proof.  <u>Celotex Corp.</u>, 477 U.S. at 322; <u>Everett v. Napper</u>, 833 F.2d 1507, 1510 (11th Cir. 1987).  All justifiable inferences are to be drawn in the light most favorable to the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  But all such inferences "must, in every case, fall within the range of reasonable probability and not be so tenuous as to amount to

9

speculation or conjecture." Thompson Everett, Inc. v. Nat'l Cable Advert., 57 F.3d 1317, 1323 (4th Cir. 1995).

Rule 56(e) mandates that a party responding to a motion for summary judgment do so with affidavits, depositions, or other admissible evidence in order to reflect that there are material facts that must be presented to the jury for resolution.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-161 (1970).  Conclusory allegations without specific supporting facts have no probative value.  Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) (citing Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985)).

## III. Analysis

### A. Section 1983

Title 42, United States Code, Section 1983 provides a civil cause of action for "a claimant who can prove that a person acting under color of state law committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States."  Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995) (citing 42 U.S.C. § 1983).

"Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment."  Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).  As such, "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  Id. at 105.

Because she was a pre-trial detainee and not a prisoner during her time at the Jail, Plaintiff's deliberate indifference claim is properly brought under the Fourteenth Amendment, and not the Eighth Amendment, for that time period. See Andujar v. Rodriguez, 486 F.3d 1199, 1203 n. 3 (11th Cir. 2007). Conversely, for the time period after her conviction and release from the Jail, her deliberate indifference claim is properly brought under the Eighth Amendment.[7] Having made that distinction, the Court notes that the deliberate indifference analysis is the same under either Amendment. Harris v. Coweta County, 21 F.3d 388, 393 n. 6 (11th Cir. 1994). Thus, precedent from Eighth Amendment cases and Fourteenth Amendment cases is applied interchangeably in the Eleventh Circuit. Lancaster v. Monroe County, 116 F.3d 1419, 1425 n. 6 (11th Cir. 1997).

### 1.  Official Capacity

State officials acting in their official capacities are not "persons" under § 1983 when they are sued for damages, and thus these suits are barred by the Eleventh Amendment. Will v. Michigan Dept. Of State Police, 491 U.S. 58, 71 (1989). However, they are persons under § 1983 when they are sued for declaratory or prospective injunctive relief (but not retroactive injunctive relief) for alleged constitutional violations grounded on federal law, since these suits are not treated as actions against the State. Gamble v. Florida

---

[7] Although Plaintiff pleaded nolo contendere in her criminal cases, once the state court entered judgment, she had been convicted of a crime. See e.g., Lott v. U.S., 367 U.S. 421, 426-427 (1961) ("...the plea [of nolo contendere] itself does not constitute conviction...it is the judgment of the court-not the plea-that constitutes the 'determination of guilt.'").

Dep't of Health & Rehabilitative Services, 779 F. 2d 1509, 1512 n. 10 (citations omitted) (11th Cir. 1986); Kentucky v. Graham, 473 U.S. 159, 169 n. 18 (1985) (citations omitted).

Here, Plaintiff seeks damages against Defendants in their official capacities. As just noted, these claims are barred by the Eleventh Amendment; thus, the Court will grant Defendants judgment as a matter of law as to those claims. See Will, supra; see also Gamble, supra. Plaintiff also seeks injunctive and declaratory relief against Defendants. Plaintiff may proceed with these claims since they are not barred by the Eleventh Amendment. See Graham, supra; see also Gamble, supra.

### 2. Personal Capacity

State officials acting in their personal (or "individual") capacities are not protected by the Eleventh Amendment. Harden v. Adams, 760 F. 2d 1158, 1164 (11th Cir. 1985). However, they may be entitled to qualified immunity. Qualified immunity is designed "to protect government officials performing discretionary functions from civil liability when their actions violate no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Thomas ex rel. Thomas v. Roberts, 323 F.3d 950, 953 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986), and it allows government officials to carry out their duties without the fear of personal liability or harassing litigation. See

Anderson v. Creighton, 483 U.S. 635, 638 (1987). It is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). "The privilege is 'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" Saucier v. Katz, 533 U.S. 194, 200-201 (2001) (quoting Forsyth, 472 U.S. at 526) (emphasis omitted).

The question of whether a defendant is entitled to qualified immunity is a question of law applied to settled facts. It turns on whether the law at the time of the incident in question was clearly established so that a reasonable person would have known that the actions of the defendant violate the law. See Courson v. McMillian, 939 F.2d 1479, 1487-88 (11th Cir. 1991). In determining whether state actors are entitled to qualified immunity, the Court must first resolve all issues of material fact in favor of Plaintiff and then answer the legal question of whether Defendants are entitled to qualified immunity under that version of the facts. Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002). The Court may decide the legal issue of qualified immunity without first addressing whether any constitutional violation has taken place. Pearson v. Callahan, 555 U.S. 223, receding from Saucier, 533 U.S. 194.

B.  State Attorney Investigator Pazienza

The Court notes that Plaintiff has not alleged any facts upon which the Court could find that Defendant Pazienza deprived Plaintiff

of medical care.   See Section I _infra_.   Accordingly, Defendant Pazienza is entitled to judgment as a matter of law.   The Court now turns to Defendant Schulson's Motion For Summary Judgment (DE 153).

C.   Assistant State Attorney Schulson

The only issue[8] for the Court as to Defendant Schulson is whether he denied, delayed, or interfered with Plaintiff's medical care in violation of the Eighth or Fourteenth Amendments by (1) opposing her request for bond, (2) opposing her motion to travel for medical treatment (which Plaintiff later withdrew), (3) prosecuting her for violating her Community Control Program, and (4) conspiring with Defendants Pazienza and Swerdowski to interfere with her medical care.   See DE 199, pp. 2-4.

Prosecutors who act within the scope of their duties enjoy absolute immunity from suit for damages under 42 U.S.C. § 1983 for alleged deprivations of a defendant's constitutional rights.   Imbler v. Pachtman, 424 U.S. 409, 430-431 (1976).   This immunity shields prosecutors when they are carrying out duties that are "integral part[s] of the judicial process," which means at the very least, acting in a prosecutorial rather than an administrative or investigative role.   Id.   Actions taken in connection with bail application are prosecutorial and thus protected by absolute immunity.   Pinaud v. County of Suffolk, 52 F. 3d 1139, 1149 (2d Cir. 1995).   Prisoners' claims that prosecutors failed to investigate

---

[8] Plaintiff has evidently withdrawn her remaining claims against Defendant Schulson. See DE 199, p. 2.

complaints about a prison's mistreatment of them are also barred by absolute prosecutorial immunity.  Henzel v. Gerstein, 608 F. 2d 654, 657 (5th Cir. 1979).

Here, Plaintiff has put forward no facts proving a conspiracy on the part of Defendants to use their legitimate roles as state officials to deprive her of medical care.  Thus, the Court finds that Defendant Schulson acted, at all relevant times, within the scope of his prosecutorial duties and thus is entitled to absolute prosecutorial immunity from Plaintiff's personal capacity claim for damages in Count II.

This absolute immunity does not shield Defendant Schulson from Plaintiff's deliberate indifference claim for declaratory and injunctive relief in Count II.  However, it is well established that under the Eighth Amendment, "prison officials may have a duty to protect the health and safety of inmates in their custody, but that duty does not extend to prosecutors." Romer v. Morgenthau, 119 F. Supp. 2d 346, 362-363 (S.D.N.Y. 2000); see also Morris v. Doyle, 2010 WL 2326042, *7 (E.D. Missouri June 8, 2010) ("It is the responsibility of prison officials to protect inmates from harm, not that of state prosecutors or investigators.") (citation omitted). This standard also applies to deliberate indifference claims brought by pre-trial detainees under the Fourteenth Amendment.  See Andujar v. Rodriguez, 486 F.3d 1199, 1203 n. 3 (11th Cir. 2007).  Thus, Defendant Schulson could not have violated Plaintiff's Eighth or Fourteenth Amendment rights since, as a prosecutor, he owed her no duty under those Amendments.  Plaintiff's Response (DE 199) entirely

15

ignores this inescapable fact.  Thus, the Court finds that Defendant Schulson is entitled to qualified immunity as to Plaintiff's claim for declaratory and injunctive relief.

Having addressed Plaintiff's claims against Defendant Schulson, the Court finds that Defendant Schulson is entitled to judgment as a matter of law.  The Court now turns to Defendant Swerdowski's Motion For Summary Judgment (DE 151).


D.  Community Control Officer Swerdowski

In Count III, Plaintiff alleges that Defendant Swerdowski violated her Fifth, Eighth, Ninth and Fourteenth Amendment rights pursuant to 42 U.S.C. §§ 1983 and 1985, both in his official and personal capacities by exhibiting a deliberate indifference to her serious medical needs and thereby denying, delaying, or interfering with her medical care.[9]  As to Defendant Swerdowski, Plaintiff's deliberate indifference claim is properly brought under the Eighth Amendment, not the Fourteenth Amendment, because she had been convicted of a crime by the time she entered the Community Control Program.  See fn. 7, infra.

The Court also notes that Plaintiff may not bring a Fifth Amendment claim against a state official.  Cf. Daniel v. United States Marshal Service, 188 Fed. App'x. 954 (11th Cir. 2006) (allowing a Fifth Amendment due process claim against two U.S. Marshals because federal action was at issue).  In addition,

_____

[9] As noted above, Plaintiff may only proceed against Defendant Swerdowski in his personal capacity, and in his official capacity claim for declaratory and injunctive relief. See discussion infra Part III.A.

16

Plaintiff may not bring a Ninth Amendment claim because that Amendment "is not an independent source of constitutional rights that may be asserted in a civil rights action...[it] cannot serve as the basis for a § 1983 claim because such a claim must be premised on the violation of a right guaranteed by the U.S. Constitution or federal law." Lloyd v. Lee, 570 F. Supp. 2d 556, 566 (S.D.N.Y. 2008).

Thus, Plaintiff may proceed with two claims: (1) her Eighth Amendment claim for deliberate indifference to her medical needs; and (2) her Fourteenth Amendment claim for violation of her right to due process of law. The Court proceeds to analyze each of these claims in turn.

1. Deliberate Indifference Claim

The first issue for the Court is whether it was clearly established that the Eighth Amendment applies to parole/probation officials, and if so, whether it was clearly established that such officials may not deny, delay, or interfere with parolees/probationers attending medical appointments.

The Eleventh Circuit has found that the "eighth amendment prohibition against cruel and unusual punishment is not applicable to cases in which the plaintiffs were not in custody as a result of having been convicted of a crime." Lynch v. Cannatella, 810 F. 2d 1363, 1375 (11th Cir.) (holding that the eighth amendment did not apply to stowaways who were detained and allegedly mistreated); accord, Adras v. Nelson, 917 F. 2d 1552, 1559-1560 (11th Cir. 1990) (holding that the Eighth Amendment did not apply to refugees who were

17

detained and allegedly mistreated).  In the instant case, Plaintiff was no longer "in custody" after she was released from the Jail into the Community Control Program.  Accordingly, the Court finds that the Eighth Amendment was not applicable here and thus Defendant Swerdowski owed Plaintiff no Eighth Amendment duty.

Assuming _arguendo_ that the Eighth Amendment did apply to Defendant Swerdowski's interaction with Plaintiff, the Court finds that he had no clearly established Eighth Amendment duty to refrain from discouraging Plaintiff from attending medical appointments.  No Supreme Court precedent, Eleventh Circuit precedent, or Florida Supreme Court precedent so holds.  Moreover, it is instructive, though not binding, that case law from other circuits likewise finds no such Eighth Amendment duty.  See _e.g._, White v. Cunningham, 261 Fed. App'x. 11, 13 (9th Cir. 2007) ("[I]t is not clearly established that parole officials have an Eighth Amendment obligation to either (1) refrain from arresting a parolee who has serious, but non-emergency, medical needs or (2) ensure that relevant authorities at the jail obtain a parolee's medical information that the parole official happens to possess.").

For instance, in Buford v. Mounts, 2006 WL 657035 (E.D. Cal. March 13, 2006), while the plaintiff was on parole, his parole officer seized his medication causing the plaintiff severe symptoms including psychotic behavior.  _Id._ at *1-2.  Plaintiff brought a Section 1983 action under the Eighth Amendment alleging that his parole officer had been aware of his need for the medication.  Notwithstanding these allegations, the district court held that the Eighth Amendment did not apply to the plaintiff because, as a

18

parolee, he was not "in custody."   <u>Id.</u> at *3.

Accordingly, the Court finds that Plaintiff's Eighth Amendment deliberate indifference claim fails because Defendant Swerdowski has not violated any clearly established Eighth Amendment right.   The Court now considers Plaintiff's Fourteenth Amendment due process claim.


## 2. Due Process Claim

In Count III, Plaintiff also claims that Defendant Swerdowski violated her Fourteenth Amendment right to due process of law.   <u>See</u> DE 35, pp. 7-9.   The Court construes this claim as one for denial of <u>substantive</u> due process.   In response, Defendant Swerdowski argues that he is entitled to qualified immunity.   Because Plaintiff has failed to submit a valid motion opposing Defendant Swerdowski's Motion For Summary Judgment (DE 151), the Court finds that Plaintiff has failed to carry her burden of demonstrating that Defendant is not entitled to qualified immunity.

The Court also notes, <u>a fortiori</u>, that Plaintiff's Fourteenth Amendment Due Process claim is without merit because she was not in custody while participating in the community control program.   "In substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf-through incarceration, institutionalization, or other similar restraint of personal liberty-which is the "deprivation of liberty" triggering protections of the Due Process Clause..."   <u>DeShaney v. Winnebago County Dep't of Social Services</u>, 489 U.S. 189, 200 (1989).

Therefore, the Court finds that Defendant Swerdowski is entitled to qualified immunity.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1.  The Motion For Summary Judgment (DE 151) filed herein by Defendant Swerdowski be and the same is hereby **GRANTED;**

2.  The Motion For Summary Judgment (DE 152) filed herein by Defendant Pazienza be and the same is hereby **GRANTED;**

3.  The Motion For Summary Judgment (DE 153) filed herein by Defendant Schulson be and the same is hereby **GRANTED;** and

4.  Final Judgment will be entered by separate Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this   31st   day of March, 2011.

WILLIAM J. ZLOCH
United States District Judge

Copies furnished:

All Counsel of Record

Rose J. Spano
P.O. Box 50136
Lighthouse Point, FL 33074-0136